IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MEGAN BARTLEY and ) <br> MICHAEL BARTLEY, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> JAIME RINKER, ) <br> JEFFERSON COUNTY JAIL, ) <br> DUSTIN MYERS, ) <br> BRANDON SCHOTT, JENNIPHER ) <br> PEARCE, KELLY LNU, ) <br> SARAH GUENETTE, ) <br> JOHN/JANE DOE(S) 1 ) <br> and JOHN/JANE DOE(S) 2, ) <br> ) <br> Defendants. ) | Civil Action No. 2:22-cv-164 <br><br><br><br><br><br><br><br><br><br><br> JURY TRIAL DEMANDED <br><br> Electronically Filed. |

COMPLAINT IN A CIVIL ACTION

COME NOW, the Plaintiffs, MEGAN BARTLEY and MICHAEL BARTLEY, by and through their attorneys, LAW OFFICES OF JOEL SANSONE, JOEL S. SANSONE, ESQUIRE, MASSIMO A. TERZIGNI, ESQUIRE, and ELIZABETH A. TUTTLE, ESQUIRE, and hereby file this Complaint in a Civil Action as follows:

JURISDICTION AND VENUE

1. This is an action for the redress of grievances and in vindication of civil rights guaranteed to the Plaintiffs under the Constitution of the United States and the laws enacted in furtherance thereof, including 42 U.S.C. § 1983.

2. This action is brought against the Defendants for violating Plaintiff Megan Bartley's rights under the First, Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

3.     Jurisdiction is founded on 28 U.S.C. § 1331 and § 1343(3).  Supplemental jurisdiction over Plaintiff Michael Bartley's state law claims is also proper pursuant to 28 U.S.C.A § 1367.

4.     Venue is proper under 28 U.S.CA. § 1391(b).  All claims set forth herein arose in the Western District of Pennsylvania.

PARTIES

5.     Plaintiff, Megan Bartley, is an adult female individual who resides in Butler County, Pennsylvania.  At all times relevant to this Complaint, Plaintiff Megan Bartley was, and is, the wife of Plaintiff Michael Bartley.

6.     Plaintiff, Michael Bartley, is an adult male individual who resides in Butler County, Pennsylvania.  At all times relevant to this Complaint, Plaintiff Michael Bartley was, and is, the husband of Plaintiff Megan Bartley.

7.     Defendant, Jaime Rinker ("Rinker"), is a United States Citizen.  Plaintiffs believe, and therefore aver, that Defendant Rinker is a resident of Jefferson County, Pennsylvania. At all times relevant to this Complaint, Defendant Rinker was employed as a law enforcement officer for the Borough of Brookville Police Department, with offices located at 70 Second Street, Suite B, Brookville, Pennsylvania 15825, purporting to act within the full scope of her authority and office and under color of law, pursuant to the statues, ordinances, regulations, and usages of the Borough of Brookville Police Department.

8.     Defendant, Jefferson County Jail ("JCJ"), is now, and was at all times relevant to Plaintiff's claims, a county correctional institution located at 578 Service Center Road, Brookville, Pennsylvania 15825. At all times relevant hereto, Defendant JCJ was acting through its agents, subsidiaries, officers, employees and assigns purporting to act within the full scope of their agency, office, employment or assignment.

9. Defendant, Dustin Myers ("Myers"), is an adult male individual. Plaintiffs believe, and therefore aver, that Defendant Myers is a United States citizen. At all times relevant to this Complaint, Defendant Myers was employed as the warden of Defendant JCJ.

10. Defendant, Brandon Schott ("Schott"), is an adult male individual. Plaintiffs believe, and therefore aver, that Defendant Schott is a United States citizen. Defendant Schott has been employed as the deputy warden of Defendant JCJ since July of 2021.

11. Defendant Jennipher Pearce ("Pearce"), is an adult female individual. Plaintiffs believe, and therefore aver, that Defendant Pearce is a United States citizen. At all times relevant to this Complaint, Defendant Pearce was a medical professional employed by Defendant JCJ.

12. Defendant Kelly LNU, is an adult female individual. Plaintiffs believe, and therefore aver, that Defendant Kelly LNU is a United States citizen. At all times relevant to this Complaint, Defendant Kelly LNU was a medical professional employed by Defendant JCJ.

13. Defendant, Sarah Guenette ("Guenette"), is an adult female individual. Plaintiffs believe, and therefore aver, that Defendant Doe is a United States citizen. At all times relevant to this Complaint, Defendant Guenette was a correctional officer employed by Defendant JCJ.

14. Defendant, John/Jane Doe(s) 1 ("Does 1"), unknown in name and number, were, at all times relevant to this Complaint, medical professionals employed by Defendant JCJ.

15. Defendant, John/Jane Doe(s) 2 ("Does 2"), unknown in name and number, were, at all times relevant to this Complaint, correctional officers and/or other individuals employed by Defendant JCJ.

FACTUAL ALLEGATIONS

16. On or about April 5, 2021, Plaintiff Megan Bartley underwent gastric bypass surgery.

17.     As a direct result of the above-described surgery, Plaintiff Megan Bartley was required to abide by specific dietary instructions and restrictions, including, but not limited to, a requirement to consume 90 to 120 grams of protein each day through protein shakes.

18.     As a result of the surgical procedure, Plaintiff Megan Bartley could not physically consume a large amount of food at one time and required six (6) small meals per day.

19.     On or about April 24, 2021, Plaintiff Megan Bartley and her two (2) minor children visited Plaintiff Megan Bartley's friend, Vondrea Holtz ("Holtz"), at her residence in Jefferson County, Pennsylvania.

20.     At that time, Plaintiff Megan Bartley, her two (2) minor children, Ms. Holtz, Ms. Holtz's children and Travis Coward ("Coward") were at Ms. Holtz's residence.

21.     At or around 8:30 pm, Defendant Rinker arrived at Ms. Holtz's residence in response to witness reports that minor children were seen unaccompanied outside of the residence. These individual witnesses reported that Mr. Crowder had been notified and that the children were no longer outside of the residence.

22.     Plaintiff Megan Bartley had just finished giving her minor child a bath when Defendant Rinker arrived.

23.     Jefferson County Children and Youth Services ("CYS") were also called to the residence and arrived shortly thereafter.

24.     Defendant Rinker and Jefferson County CYS workers questioned Ms. Holtz, Mr. Coward and Plaintiff Megan Bartley.

25.     At that time, Defendant Rinker accused Mr. Coward, Ms. Holtz and/or Plaintiff Megan Bartley of being under the influence of marijuana. Plaintiff Megan Bartley was not under the influence of marijuana or any other substance at that time.

26.     Furthermore, Defendant Rinker later testified at Plaintiff Megan Bartley's preliminary hearing that Plaintiff Megan Bartley did not show any signs of impairment associated with the use of marijuana at that time.

27.     Jefferson County CYS determined that it was safe for the children to stay in the residence with Plaintiff Megan Bartley, Ms. Holtz and Mr. Coward.

28.     Defendant Rinker and Jefferson County CYS then left the residence.

29.     Neither Jefferson County CYS nor Butler County CYS opened any investigation into Plaintiff Megan Bartley as a result of the events described hereinbefore above.

30.     On or about May 3, 2021, Defendant Rinker charged Plaintiff Megan Bartley with a felony count of endangering the welfare children in connection with the events described hereinbefore above.

31.     Defendant Rinker lacked any probable cause to charge Plaintiff Megan Bartley with endangering the welfare of children.

32.     On or about May 5, 2021, at a probation hearing on an unrelated matter, Plaintiff Megan Bartley was handcuffed and detained due to the above-described criminal charge.

33.     Plaintiff Megan Bartley was then incarcerated at Defendant JCJ pending trial.

34.     Throughout Plaintiff Megan Bartley's incarceration at Defendant JCJ, Defendants Myers, Schott, Pearce, Guenette, Does 1 and/or Does 2 were deliberately indifferent to Plaintiff Megan Bartley's medical needs and/or dietary restrictions and failed to provide Plaintiff Megan Bartley with her medically prescribed diet and/or adequate medical care.

35.     Plaintiff Megan Bartley repeatedly informed Defendants Myers, Schott, Pearce, Guenette, Does 1 and/or Does 2 of her medical needs.  Plaintiff Megan Bartley provided this

information to the individual defendants through various sources, including, but not limited to, physicians' notes and letters.

36.     Despite their actual knowledge of such, Defendants, and each of them, failed to provide Plaintiff Megan Bartley with her medical needs, including, but not limited to, the diet required as a direct result of her surgical procedure.

37.     During the first week of Plaintiff Megan Bartley's incarceration, she was given bread, pasta, potatoes and other foods that she could not consume without becoming severely ill due to her surgical procedure, as described hereinbefore above.

38.     Furthermore, Plaintiff Megan Bartley was not given an adequate amount of protein, nor was she permitted to eat her required six (6) small meals per day.

39.     As a result, Plaintiff Megan Bartley was severely ill and rapidly lost approximately fifteen (15) pounds in the first week of her incarceration.

40.     Sometime thereafter, after multiple complaints by Plaintiff Megan Bartley, she began to receive Carnation protein shakes. Plaintiff Megan Bartley, however, was prescribed Premier Protein shakes by her physician which are low in sugar and do not cause dumping syndrome.

41.     Carnation shakes contain high amounts of sugar and other ingredients that Plaintiff Megan Bartley could not process due to her surgical procedure. Plaintiff Megan Bartley, therefore, continued to experience severe illness.

42.     Furthermore, Plaintiff Megan Bartley continued to not be given an adequate amount of protein and was not fed the required six (6) small meals per day.

43.     As a direct and proximate result of the Defendants' deliberate indifference to provide Plaintiff Megan Bartley with her necessary dietary needs and adequate medical care, Plaintiff Megan Bartley developed dumping syndrome.

44.     Plaintiff Megan Bartley was repeatedly taken to her physician due to her severe sickness. Each time, Plaintiff's physician reported her specific dietary and medical needs to Defendants JCJ, Myers, Schott, Pearce, Kelly LNU, Guenette, Does 1 and/or Does 2.

45.     Plaintiff Megan Bartley continuously complained to Defendants JCJ, Myers, Schott, Pearce, Kelly LNU, Guenette, Does 1 and/or Does 2 of stomach cramping, nausea, and heart palpitations.

46.     Plaintiff Megan Bartley also frequently vomited blood.

47.     Despite Plaintiff Megan Bartley's ongoing complications, and the Defendants' actual knowledge thereof, Defendants Myers, Schott, Pearce, Kelly LNU, Guenette, Does 1 and/or Does 2 were deliberately indifferent to Plaintiff Megan Bartley's serious medical and dietary needs in that they did not provide Plaintiff Megan Bartley with adequate diet and/or medical care.

48.     Throughout Plaintiff Megan Bartley's incarceration, Plaintiff Megan Bartley had four (4) abnormal electrocardiogram tests.

49.     Defendant JCJ's medical staff, including, but not limited to, Defendants Pearce, Kelly LNU and/or Does 1, were deliberately indifferent to Plaintiff Megan Bartley's medical needs and failed to provide Plaintiff Megan Bartley with any medical care to address the aforementioned abnormal electrocardiogram tests, despite the Plaintiff's continual complaints of heart palpitations.

50.     Defendant JCJ's medical staff, including, but not limited to, Defendants Pearce, Kelly LNU and/or Does 1, also dispensed incorrect medications to the Plaintiff which caused Plaintiff Megan Bartley to suffer an allergic reaction and to develop hives.

51. Throughout Plaintiff Megan Bartley's incarceration, Plaintiff Megan Bartley submitted numerous grievances related to her dietary restrictions and the inadequate medical care, as more fully described hereinbefore above, including, but not limited to, Defendants' failure to provide the Plaintiff with adequate amounts of protein, failure allow Plaintiff Megan Bartley to eat six (6) small meals, as was medically necessary, and Defendants' failure to provide Plaintiff Megan Bartley with the proper medications.

52. Throughout Plaintiff Megan Bartley's incarceration, Defendants Myers and/or Schott had actual knowledge of, and were deliberately indifferent to, the inadequate medical care and failure to comply with Plaintiff Megan Bartley's medically required dietary restrictions, as described herein.

53. In a letter dated May 21, 2021, President Judge John H. Foradora provided a medical report from Plaintiff Megan Bartley's physician detailing Plaintiff Megan Bartley's medical and dietary needs to Defendant Myers.

54. Despite that letter, Plaintiff Megan Bartley's medical and dietary issues were not adequately addressed.

55. Plaintiff Megan Bartley continued to not be allowed to eat six (6) small meals per day, as required due to her inability to consume large portions of food. As a result, Plaintiff Megan Bartley was unable to consume the necessary daily amount of protein and other nutrients at the times food was provided to her.

56. Furthermore, Defendant Myers and/or Defendant Schott responded to various grievances about the Plaintiff Megan Bartley's required diet, stating that it "was not a grievable issue."

57. On or about July 13, 2021, Plaintiff Megan Bartley was taken to the Penn Highlands Brookville Emergency Room due to her extreme illness. Plaintiff Megan Bartley was diagnosed with malnutrition and iron deficiency.

58. Plaintiff Megan Bartley was again prescribed the appropriate protein shakes and Defendants JCJ, Myers, Schott, Pearce, Kelly LNU, Guenette, Does 1 and/or Does 2 were again notified of Plaintiff's Megan Bartley dietary and medical needs.

59. Despite actual knowledge of Plaintiff Megan Bartley's malnutrition diagnosis and iron deficiency, Defendants JCJ, Myes, Schott, Pearce, Kelly LNU, Guenette, Does 1 and/ Does 2 were deliberately indifferent to the Plaintiff's medical needs and failed to provide Plaintiff Megan Bartley with an adequate diet and/or adequate medical care, including, but not limited to, necessary iron infusions in order to address Plaintiff Megan Bartley deficiency upon her return to Defendant JCJ.

60. Throughout Plaintiff Megan Bartley's incarceration, Plaintiff Megan Bartley was unable to consume the large portions given to her at breakfast, lunch and dinner and, therefore, began to store food in order to eat smaller portions more frequently throughout the day, as was medically necessary.

61. On or about August 1, 2021, Defendant Guenette reprimanded Plaintiff Megan Bartley for storing food to address her dietary and medical needs. Thereafter, Plaintiff Megan Bartley was placed in solitary confinement for four (4) days.

62. Plaintiff believes, and therefore avers, that she was placed in solitary confinement in retaliation for her numerous complaints and grievances concerning her inadequate diet and lack of adequate medical care.

63. While in solitary confinement, Plaintiff Megan Bartley lost a significant amount of weight.

64. On a separate occasion, Plaintiff Megan Bartley was placed in solitary confinement and lost twenty (20) pounds in one (1) week as a direct and proximate result of Defendants' deliberate indifference to the Plaintiff Megan Bartley's medical and dietary needs.

65. As a direct and proximate result of Plaintiff Megan Bartley's diet and lack of medical care and the Defendants' deliberate indifference to the Plaintiff's dietary and medical needs, Plaintiff Megan Bartley suffered rapid weight loss, malnutrition, iron deficiency and severe hair loss.

66. In addition to physical denial of medical care, as described hereinbefore above, Plaintiff Megan Bartley was also denied mental health care by Defendants JCJ, Myers, Schott, Guenette, Does 1 and/or Does 2.

67. On or about October 21, 2021, a jury acquitted Plaintiff Megan Bartley of all charges.

68. Thereafter, Plaintiff Megan Bartley was released from Defendant JCJ.

69. As a direct and proximate result of the Defendants' deliberate indifference to the Plaintiff's dietary and medical needs, as more fully described hereinbefore above, Plaintiff Megan Bartley suffered, and continues to suffer, from numerous medical issues, including, but not limited to, malnutrition and heart complications.

70. Plaintiff Megan Bartley also suffered, and continues to suffer, severe emotional distress.

71. Furthermore, and as a direct and proximate result of Defendants' actions and/or inactions, and the severe physical and mental trauma Plaintiff suffered as a result thereof, Plaintiff Megan Bartley and Plaintiff Michael Bartley has been unable to be physically and/or emotionally intimate and/or engage in sexual relations in their marriage.

COUNT I:

PLAINTIFF MEGAN BARTLEY v. DEFENDANT RINKER

VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS,
SPECIFICALLY, 42 U.S.C. §1983 AND THE FOURTH AMENDMENT
TO THE UNITED STATES CONSTITUTION

<u>MALICIOIUS PROSECUTION</u>

72. Plaintiffs incorporate by reference Paragraphs 1 through 71 as though fully set forth at length herein.

73. Plaintiff Megan Bartley claims damages for the injuries set forth herein under 42 U.S.C. §1983 against Defendant Rinker for violations of her constitutional rights under color of law.

74. At all times relevant hereto, pursuant to 42 U.S.C. §1983 and the Fourth Amendment to the United States Constitution, Megan Bartley had the right to be free from prosecution without probable cause.

75. Defendant Rinker intentionally charged Plaintiff Megan Bartley without probable cause and initiated the unjustified prosecution of the Plaintiff.

76. Defendant Rinker knew, or should have known, through the exercise of reasonable caution, that no reasonable basis existed for the aforementioned criminal charges to be brought against Plaintiff Megan Bartley.

77. Charging Plaintiff Megan Bartley without probable cause constitutes malice on the part of Defendant Rinker.

78. The arrest, seizure and subsequent prosecution of Plaintiff Megan Bartley constituted a malicious prosecution by Defendant Rinker in violation of her rights under 42 U.S.C. § 1983 and the Fourth Amendment of the United States Constitution.

79. The actions of Defendant Rinker constituted malicious prosecution in that:

    a.      Defendant Rinker initiated criminal proceedings against Plaintiff Megan Bartley;

    b.      the criminal proceedings ended in Plaintiff Megan Bartley's favor;

    c.      the arrest, seizure and prosecution of Plaintiff Megan Bartley were initiated without probable cause;

    d.      Defendant Rinker acted maliciously and/or for purposes other than bringing Plaintiff Megan Bartley to justice; and

    e.      Plaintiff Megan Bartley suffered an unlawful seizure of her person in violation of Plaintiff's rights under 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution.

80.    The actions of Defendant Rinker were willful, wanton and/or done with a reckless disregard for the rights of Plaintiff Megan Bartley, thereby subjecting Defendant Rinker to punitive damages.

81.    As a direct and proximate result of the acts described hereinbefore above perpetrated by Defendant Rinker, Plaintiff Megan Bartley suffered the following injuries and damages:

    a.      Plaintiff Megan Bartley's rights under the Fourth Amendment to the United States constitution were violated;

    b.      physical pain and suffering;

    c.      fright, horror, and shock;

    d.      emotional trauma and suffering; and

    e.      economic damages related to any other consequential costs.

WHEREFORE, Plaintiff Megan Bartley demands compensatory general damages against Defendant Rinker, in the amount proven at trial; compensatory special damages including, but not limited to, costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages against Defendant Rinker and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT II:

PLAINTIFF MEGAN BARTLEY
v.
DEFENDANTS JCJ, MYERS, SCHOTT, PEARCE, KELLY LNU and DOES 1

VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS,
SPECIFICALLY, 42 U.S.C. §1983 AND THE FOURTEENTH AMENDMENT
TO THE UNITED STATES CONSTITUTION

FAILURE TO PROVIDE ADEQUATE MEDICAL CARE

82. Plaintiffs incorporate by reference Paragraphs 1 through 81 as though fully set forth at length herein.

83. Plaintiff Megan Bartley claims damages for the injuries set forth herein under 42 U.S.C. § 1983 against Defendants for violations of her constitutional rights under color of law.

84. At all times relevant hereto, pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution, Plaintiff Megan Bartley had the right to adequate medical care while she was incarcerated.

85. As more fully described hereinbefore above, Defendants' failure to provide adequate medical care to Plaintiff Megan Bartley constituted deliberate indifference to her serious medical needs in violation of the Fourteenth Amendment's prohibition against cruel and unusual punishment.

86. As more fully described hereinbefore above, during her incarceration, Plaintiff Megan Bartley has suffered from medical issues including, but not limited to, malnutrition, iron deficiency, extreme weight loss, vomiting blood, heart palpitations, dumping syndrome and hair loss.

87. Defendants, and each of them, failed to provide Plaintiff Megan Bartley with adequate medical care, despite actual knowledge of her serious medical conditions, as more fully described hereinbefore above.

88. As more fully described hereinbefore above, Defendants Myers and/or Schott had actual knowledge of the failure to provide Plaintiff Megan Bartley with adequate medical care and were deliberately indifferent to these failures.

89. The actions of the individual Defendants were willful, wanton and/or done with a reckless disregard for Plaintiff Megan Bartley's rights, thereby subjecting the individual Defendants to punitive damages.

90. As a direct and proximate result of the acts described hereinbefore above, perpetrated by the Defendant, Plaintiff Megan Bartley suffered the following injuries and damages:

   a. Plaintiff Megan Bartley's rights under the Fourteenth Amendment to the United States constitution were violated;

   b. physical pain and suffering;

   c. fright, horror, and shock;

   d. emotional trauma and suffering; and

   e. economic damages related to any other consequential costs.

WHEREFORE, Plaintiff Megan Bartley demands compensatory general damages against Defendants in the amount proven at trial; compensatory special damages including, but not limited to, costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages against individual Defendants; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT III:

PLAINTIFF MEGAN BARTLEY v. DEFENDANT GUENETTE

VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS,
SPECIFICALLY, §1983 AND THE FIRST AMENDMENT
OF THE UNITED STATES CONSTITUTION

RETALIATION

91. Plaintiffs incorporate by reference Paragraphs 1 through 90 as though fully set forth at length herein.

92. Plaintiff Megan Bartley claims damages for the injuries set forth herein under 42 U.S.C. §1983 against Defendant Guenette for violation of her constitutional rights under color of law.

93. At all times relevant hereto, Plaintiff Megan Bartley had the right to be free from retaliation based on her right to freedom of speech.

94. As more fully described hereinbefore above, Defendant Guenette reprimanded Plaintiff Megan Bartley for storing food in order to address her dietary and medical needs and the Plaintiff Megan Bartley was placed in solitary confinement for one (1) week.

95. Plaintiff Megan Bartley believes, and therefore avers, that she was placed in solitary confinement in retaliation for her numerous complaints and grievances concerning her inadequate diet and lack of adequate medical care.

96. Defendant's actions deprived Plaintiff Megan Bartley of rights guaranteed to her by the First Amendment.

97. As a direct and proximate result of the acts described hereinbefore above perpetrated by Defendant Guenette, Plaintiff Megan Bartley suffered the following injuries and damages:

    a.    Plaintiff Megan Bartley's rights under the First Amendment to the United States constitution were violated;

    b.    physical pain and suffering;

    c.    fright, horror, and shock;

    d.    emotional trauma and suffering; and

    e.    economic damages related to any other consequential costs.

WHEREFORE, Plaintiff Megan Bartley demands compensatory general damages against the Defendant Guenette, in the amount proven at trial; compensatory special damages; costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages against the Defendant; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT IV:

PLAINTIFF MICHAEL BARTLEY v. DEFENDANTS

VIOLATION OF PLAINTIFFS'
PENNSYLVANIA COMMON LAW RIGHTS

<u>LOSS OF CONSORTIUM</u>

98.    Plaintiffs incorporate by reference Paragraphs 1 through 97 as though fully set forth at length herein.

99.    As a direct result of the Defendants' actions, as described hereinbefore, Plaintiff Michael Bartley suffered from lack of physical and/or emotional intimacy and/or sexual relations in his marriage.

100.    The actions of the individual Defendants were willful, deliberate, and were done with reckless disregard for the rights of Plaintiff Michael Bartley , thereby subjecting the individual Defendants to punitive damages.

101.  As a direct and proximate result of the acts described hereinbefore above perpetrated by the Defendants, Plaintiff Michael Bartley suffered the following injuries and damages:

      a.    violation of Plaintiff Michael Bartley's Pennsylvania Common Law rights;

      b.    harm to Plaintiffs' marriage;

      c.    loss of physical intimacy and/or sexual relations in Plaintiffs' marriage;

      d.    such other damages as may become apparent through the discovery process.

WHEREFORE, Plaintiff Michael Bartley demands compensatory general damages against Defendants, and each of them, in the amount proven at trial; compensatory special damages including, but not limited to, costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages against the individual Defendants, and each of them, and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

                                                                                                  JURY TRIAL DEMANDED

Respectfully submitted,

LAW OFFICES OF JOEL SANSONE

s/ Joel S. Sansone
Joel S. Sansone, Esquire
PA ID No. 41008
Massimo A. Terzigni, Esquire
PA ID No. 317165
Elizabeth A. Tuttle, Esquire
PA ID No. 322888
*Counsel for Plaintiff*

Law Offices of Joel Sansone
Two Gateway Center, Suite 1290
603 Stanwix Street
Pittsburgh, Pennsylvania 15222
412.281.9194

Dated: January 27, 2022