IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| MEGAN BARTLEY, MICHAEL BARTLEY, <br><br> Plaintiffs, <br><br> vs. <br><br> JAIME RINKER, JEFFERSON COUNTY JAIL, DUSTIN MYERS, BRANDON SCHOTT, JENNIFER PEARCE, KELLY CASADO DE ACHAVAL, SARAH GUENETTE, JOHN/JANE DOE(S) 1, JOHN/JANE DOE(S) 2, JEFFERSON COUNTY, PRIMECARE MEDICAL, INC., <br><br> Defendants, | 2:22-CV-00164-CRE |

## **MEMORANDUM OPINION**[1]

CYNTHIA REED EDDY, United States Magistrate Judge.

## I.    INTRODUCTION

This civil action was initiated by Plaintiffs, Megan and Michael Bartley, against Defendant(s), Jaime Rinker, Jefferson County, Dustin Myers, Brandon Schott, PrimeCare Medical, Inc., Jennipher Pearce, Kelly Casado de Achaval, and Sarah Guenette. The Second Amended Complaint alleges the following counts:

---

[1]     In accordance with the provisions of 28 U.S.C. § 636(c)(1), Plaintiffs and the named and served Defendants have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and the entry of a final judgment. While named and unserved defendants generally must also consent for a magistrate judge to exercise jurisdiction based on "consent of the parties" under that statute, *see Burton v. Shamp*, 25 F.4th 198 (3d Cir. 2022) (citing with approval *Williams v. King*, 875 F.3d 500 (9th Cir. 2017) and *Coleman v. Labor and Industry Review Comm'n*, 860 F.3d 461 (7th Cir. 2017)), this Court is unaware of any decision holding that consent is necessary from defendants who are both unserved and unidentified, such as the Doe defendants in this case. Courts disregard such defendants in other contexts, including contexts affecting jurisdiction. *See, e.g.*, 28 U.S.C. § 1441(b)(1) (providing that for removal based on diversity of citizenship, "the citizenship of defendants sued under fictitious names shall be disregarded"); *Fat T, Inc. v. Aloha Tower Assocs. Piers 7, 8 & 9*, 172 F.R.D. 411, 414–15 (D. Haw. 1996) (reaching the same conclusion for diversity jurisdiction over cases first filed in federal court). The Court therefore concludes that consent of the unserved Doe defendants in this case, specifically John/Jane Doe(s) 1 and John/Jane Doe(s) 2, is unnecessary to proceed under § 636(c).

| | |
|---|---|
| Count I: | Violations of 28 U.S.C. §1983 and the Fourth Amendment for malicious prosecution (Plaintiff Megan Bartley vs. Defendant Rinker) |
| Count II: | Violations of 28 U.S.C. §1983 and the Fourteenth Amendment for failure to provide adequate medical care (Plaintiff Megan Bartley vs. Defendants Jefferson County, Myers, Schott, PrimeCare, Pearce, Casado de Achaval); |
| Count III: | Violations of 28 U.S.C. §1983 and the First Amendment for retaliation (Plaintiff Megan Bartley vs. Defendant Guenette); |
| Count IV: | Violations of Pennsylvania common law rights for intentional infliction of emotional distress (Plaintiff Megan Bartley vs. Defendants Myers, Schott, Guenette, PrimeCare, Pearce, and Casado de Achaval); |
| Count V: | Violations of Pennsylvania common law rights for negligent infliction of emotional distress (Plaintiff Megan Bartley vs. Defendant PrimeCare); and, |
| Count VI: | Violations of Pennsylvania common law rights for loss of consortium (Plaintiff Michael Bartley vs. all Defendants). |

(ECF No. 51).

This Court has subject matter jurisdiction under 28 U.S.C. §1331 and §1343(3) and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C.A. §1367.

Presently before the Court are three Motions to Dismiss Plaintiffs' Second Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 52, 55, 59). The first Motion is a partial motion to dismiss filed by Defendants PrimeCare Medical, Inc., Jennipher Pierce, and Kelly Casado de Achaval ("PrimeCare Defendants") seeking a dismissal of Counts IV, V, and VI only. (ECF No. 52). The second Motion is a partial motion to dismiss filed by Defendant Jaime Rinker seeking dismissal of Count I only. (ECF No. 55). The third Motion is a partial motion to dismiss filed by Defendants Jefferson County, Dustin Myers, Brandon Schott, and Sarah Guenette ("County Defendants") seeking dismissal of Counts IV and VI only. (ECF No. 59). The Motions are fully briefed and ripe for disposition. (ECF Nos. 53, 58, 60, 64, 65, 66, 68, and 74).

For the reasons that follow, Defendant PrimeCare's partial Motion to Dismiss Count V is denied as moot and the PrimeCare Defendants' partial Motion to Dismiss Counts IV and VI (ECF No. 52) is denied.  Defendant Jaime Rinker's partial Motion to Dismiss Count I only (ECF No. 55) is denied.  County Defendants' partial Motion to Dismiss Counts IV and VI only (ECF No. 59) is granted in part and denied in part.

## II.    BACKGROUND[2]

Plaintiff Megan Barley ("Plaintiff") alleges that she underwent gastric bypass surgery on April 5, 2021 and was required to abide by specific dietary instructions and restrictions, including to consume 90 to 120 grams of protein over the course of six small meals each day through protein shakes.

On April 24, 2021, Plaintiff and her two minor children visited a friend, Vondrea Holtz at her residence in Jefferson County.  Defendant Rinker, an enforcement officer for the Borough of Brookville Police Department purporting to act within the full scope of her authority and office and under color of law, arrived at Ms. Holtz's residence around 8:30 p.m. in response to witness reports that minor children were seen unaccompanied outside of the residence.  The minor children were not outside when Defendant Rinker arrived.  Plaintiff had just finished bathing her minor child when Defendant Rinker arrived.  Jefferson County Children and Youth Services ("CYS") was also called to the residence and arrived shortly thereafter.

Defendant Rinker and CYS workers questioned Plaintiff, Ms. Holtz, and another friend that was there, Mr. Coward.  Defendant Rinker accused all three of being under the influence of marijuana.  Plaintiff was not under the influence of marijuana at the time and Defendant Rinker

---

[2]    All background facts are taken from the Second Amended Complaint.  (ECF No. 51).  Because the case is before the Court on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts a true all allegations in the Second Amended Complaint and all reasonable inference that can be drawn from it.  *See Rocks v. City of Phila.,* 868 F.2d 644, 645 (3d Cir. 1989). In addition, the Court views all well-pleaded factual avers and reasonable inferences in the light most favorable to the non-moving party.

later testified at her preliminary hearing that she did not show any signs of impairment associated with the use of marijuana. According to Plaintiff, CYS determined that it was safe for the children to stay in the residence with Plaintiff, Ms. Holtz, and Mr. Coward and Defendant Rinker and CYS left the residence. According to Plaintiff, neither CYS nor Butler County CYS (Plaintiff's county of residence) opened an investigation as a result of the events.

On May 3, 2021, Defendant Rinker charged Plaintiff with a felony count of endangering the welfare of children in connection with these events. Plaintiff asserts that Defendant Rinker lacked probable cause to charge her with endangering the welfare of children. On May 5, 2021, at a probation hearing on an unrelated matter, Plaintiff was handcuffed and detained due to the felony charge of endangering the welfare of children. Plaintiff remained incarcerated at the Jefferson County Jail ("Jail") pending trial.

Plaintiff alleges that throughout her incarceration at the Jail, Defendants Myers, Schott, Pearce, and Guenette were deliberately indifferent to her medical needs and/or dietary restrictions and failed to provide her with her medically prescribe diet and/or adequate medical care. Defendant Myers was the warden of the Jail. Defendant Schott was a deputy warden at the Jail. Both were allegedly acting within the full scope of their authority and office. Defendant Guenette was employed by Defendant Jefferson County as a correctional officer at the Jail. Defendant Pearce was a medical professional employed by Defendant PrimeCare at the Jail.

Plaintiff asserts that she repeatedly informed Defendants Myers, Schott, Pearce, Guenette, and others of her medical needs through various sources, including but not limited to physicians' notes and letters. Despite this knowledge, Plaintiff contends these Defendants failed to provide her with her medical needs, including the dietary restrictions resulting from her surgery. During her first week of incarceration, Plaintiff was given bread, pasta, potatoes, and

4

other food she could not consume without becoming severely ill. She was not given an adequate amount of protein nor permitted to eat her required six small meals per day. As a result, she alleges that she became severely ill and rapidly lost fifteen pounds in the first week.

After multiple complaints, at some point Plaintiff began to receive Carnation protein shakes, but was not given an adequate amount of protein and was not fed the required six small meal per day. According to Plaintiff, Carnation shakes contain high amounts of sugar and other ingredients that Plaintiff's body could not process. Plaintiff asserts that she was prescribed Premier Protein shakes by her physician because they are low in sugar and do not cause dumping syndrome. Thus, Plaintiff asserts she continued to experience sever illness. Plaintiff contends that as a result of Defendants' deliberate indifference, she developed dumping syndrome.

Plaintiff was repeatedly taken to her physician due to her severe sickness and each time her physician reported her specific dietary and medical needs to Defendants Myers, Schott, Pearce, Casado de Achaval,[3] and Guenette. Plaintiff continuously complained of stomach cramping, nausea, and heart palpitations to these Defendants and frequently vomited blood, yet these Defendants did not provide Plaintiff was adequate diet and/or medical care.

During her incarceration, Plaintiff had four abnormal electrocardiogram tests. According to Plaintiff, Defendants Pearce, Casado de Achaval, and others on staff at PrimeCare were deliberately indifferent to her medical needs and failed to provide her with any medical care to address the abnormal electrocardiogram tests, despite her complaints of heart palpitations. Additionally, they dispensed incorrect medication which caused Plaintiff to suffer an allergic reaction and develop hives.

---

[3] At all times, Defendant Casado de Achaval was a medical professional employed by Defendant PrimeCare at the Jail.

Throughout her incarceration, Plaintiff submitted numerous grievances through the Jail's internal complaint system related to her dietary restrictions and the alleged inadequate medical care. Plaintiff asserts Defendants Myers and/or Schott had knowledge of this but were deliberately indifferent to the inadequate medical care and failed to comply with Plaintiff's medically required dietary restrictions. They responded to her grievances about her required diet stating that it "was not a grievable issue." Despite actual knowledge of her serious medical condition and need for medical care, Plaintiff contends Defendants Jefferson County, Myers, and Schott failed to take any action in response to her various complaints.

In a letter dated May 21, 2021, President Judge John H. Faradora provided a medical report from Plaintiff's physician detailing her medical and dietary needs to Defendant Myers but, according to Plaintiff, her medical and dietary issues were not adequately addressed by any Defendant as she was not permitted to eat six small meals per day. As a result, she was unable to consume the necessary daily amount of protein and other nutrients at the times food was provided to her.

On July 13, 2021, Plaintiff was taken to Penn Highlands Brookville Emergency Room and was diagnosed with malnutrition and iron deficiency. Plaintiff was again prescribed the appropriate protein shakes and Defendants Myers, Schott, Pearce, Casado de Achaval, and Guenette were notified of her dietary and medical needs. Despite this notification, upon her return to the Jail these Defendants were deliberately indifferent and failed to provide Plaintiff with, *inter alia,* necessary iron infusions.

Throughout her incarceration, Plaintiff was unable to consume the large portions given to her at breakfast, lunch, and dinner, so she began to store food in order to eat smaller portions more frequently throughout the day. On August 1, 2021, Defendant Guenette reprimanded

Plaintiff for storing food and, thereafter, Plaintiff was placed in solitary confinement for four days. While in solitary confinement Plaintiff lost significant weight (on a separate occasion, Plaintiff lost twenty pounds in one week while in solitary confinement). Plaintiff asserts that she was placed in solitary confinement in retaliation for her numerous complaints and grievances concerning her inadequate diet and lack of adequate medical care.

Plaintiff submits that while she was incarcerated she suffered rapid weight loss, malnutrition, iron deficiency, and severe hair loss. Additionally, Plaintiff alleges she was denied mental health care by Defendants.

On October 21, 2021, a jury acquitted Plaintiff of all charges and she was released from the Jail.

Plaintiff asserts she has suffered and continues to suffer from numerous medical issues and emotional distress. Plaintiff has sought medical treatment for her emotional distress and was prescribed various medications. As a result of the aforementioned, Plaintiff and Plaintiff Michael Bartley contend that have been unable to be physically or emotionally intimate or engage in sexual relations in their marriage.

## III.   STANDARD OF REVIEW

### a.   Federal Rule of Civil Procedure 12(b)(6)

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well settled. Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atlantic Corp.*, 550 U.S. at 556). Yet the court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000), or the plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

Although a complaint does not need detailed factual allegations to survive a Fed. R. Civ. P. 12(b)(6) motion, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp.*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." *Bell Atlantic Corp.*, 550 U.S. at 555. Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Bell Atlantic Corp.*, 550 U.S. at 556).

The plausibility standard is not akin to a "probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between

possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atlantic Corp.*, 550 U.S. at 556) (internal citations omitted).

When considering a Rule 12(b)(6) motion, the court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974). The court does not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

As a general rule, if a court "consider[s] matters extraneous to the pleadings" on a motion to dismiss, the motion must be converted into one for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, a court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents integral to or explicitly relied on in the complaint, even if they are not attached thereto, without converting the motion into one for summary judgment. *Mele v. Fed. Rsrv. Bank of New York*, 359 F.3d 251, 256 (3d Cir. 2004) n. 5 (3d Cir. 2004); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

IV. **DISCUSSION**

    a. **PrimeCare Defendants' partial Motion to Dismiss Counts IV, V, and VI only (ECF No. 52)**

        1. <u>Count V (Negligent Infliction of Emotional Distress ("NIED"))</u>

Count V is brought by Plaintiff against Defendant PrimeCare only. (ECF No. 51, p. 19). Defendant PrimeCare assert that Plaintiff's NIED claim is premised on the failure to provide adequate medical care and, as such, it is a claim for professional negligence. Ds' Br. (ECF No. 53, pp. 6-8). To that end, Defendant PrimeCare argues that Plaintiff should have filed a timely

9

certificate of merit and the failure to do so is fatal to Plaintiff's NIED claim. *Id.* In response, Plaintiff withdrew her claim of NIED against Defendant PrimeCare. (ECF No. 65, p. 2 n. 1; No. 74, p. 2). Consequently, Count V is no longer a claim in the case. Thus, Defendant PrimeCare's Motion as to Count V (ECF No. 52) is now moot and is denied as such.

        2.    <u>Count IV (Intentional Infliction of Emotional Distress ("IIED"))</u>

PrimeCare Defendants next argue that Plaintiff's IIED claim should be dismissed because the Second Amended Complaint fails to allege sufficient "outrageous" facts to support such a claim. Ds' Br. (ECF No. 53, pp. 8-10). While the Pennsylvania Supreme Court has not yet recognized a cause of action for IIED, the Third Circuit has predicted that the Pennsylvania Supreme Court will recognize such a claim. *See, Pavlik v. Lane Limited/Tobacco Exporters International*, 135 F.3d 876 (3d Cir. 1998); *Kelly v. Jones*, 148 F. Supp. 3d 395, 405 (E.D. Pa. 2015), order vacated in part, No. 14-CV-4317, 2015 WL 5144187 (E.D. Pa. May 13, 2015), and order reinstated, No. CV 14-4317, 2015 WL 7574348 (E.D. Pa. Nov. 24, 2015). To state a claim for IIED under Pennsylvania law, a plaintiff must allege the following with regard to a defendant's conduct: (1) it was extreme and outrageous; (2) intentional or reckless; and (3) it caused severe emotional distress. *Dingle v. Centimark Corp.*, No. CIV.A. 00-6418, 2002 WL 1200944, at *8 (E.D. Pa. June 3, 2002) (citing *Wisniewski v. Johns Manville Corp.*, 812 F.2d 81, 85 (3d Cir. 1987)).

> The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in any civilized society. It has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort.

*Reardon v. Allegheny College*, 926 A.2d 477, 488 (Pa. Super. Ct. 2007).

The Restatement (Second) of Torts provides guidance as to what constitutes extreme and outrageous conduct:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim, "Outrageous!"
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt.

Restatement (Second) of Torts, § 46, comment d.

It is for the court to determine whether the alleged conduct can be regarded as so extreme and outrageous so as to permit recovery. *Dawson v. Zayre Dep't Stores*, 499 A.2d 648, 649 (Pa. Super. Ct. 1985). Where reasonable minds may differ, it is for the jury to determine whether the conduct is sufficiently extreme and outrageous so as to result in liability. Restatement (Second) of Torts, § 46, comment h. Upon review of the Second Amended Complaint in the light most favorable to Plaintiff, as a court must at this stage, this Court finds that the facts alleged in the Second Amended Complaint set forth above sufficiently allege extreme and outrageous conduct against the PrimeCare Defendants so as to survive the motion to dismiss stage. Therefore, PrimeCare Defendants' Motion to Dismiss Count IV (ECF No. 52) is denied.

### 3. Count VI (Loss of Consortium)

PrimeCare Defendants seek to dismiss Plaintiff Michael Bartley's loss of consortium on

the theory that if the claims for IIED and the NIED are dismissed, Plaintiff Michael Bartley's claim for loss of consortium must be dismissed as well. Since the Court has not dismissed Plaintiff's claims for IIED, PrimeCare Defendants' motion to dismiss Count VI for loss of consortium is denied.

Consequently, Defendant PrimeCare's Motion as to Count VI (ECF No. 52) is denied.

**b.     Defendant Jaime Rinker's partial Motion to Dismiss Count I only (ECF No. 55)**

1.     <u>Count I (Malicious Prosecution) – Failure to State a Claim</u>

Count I of the Second Amended Complaint asserts a cause of action against Defendant Rinker pursuant to §1983 and the Fourth Amendment for malicious prosecution. (ECF No. 51). The following elements are necessary to establish a claim for malicious prosecution pursuant to the Fourth Amendment: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Halsey v. Pfeiffer*, 750 F.3d 273, 296-97 (3d Cir. 2014). Defendant Rinker argues that Count I for malicious prosecution should be dismiss because probable cause existed to initiate the charges and there are no facts in the Second Amended Complaint that she acted maliciously. D's Br. (ECF No. 58, pp. 4-6). Specifically, Defendant Rinker points to the Affidavit of Probable Cause attached to the Criminal Complaint to support her position that probable cause existed to initiate the filing of charges and argues that Plaintiff's allegations that there was probable cause are merely bald allegations.[4]  *Id.* at pp. 5-6.

---

[4]Defendant Rinker relies on an extraneous document - the Police Criminal Complaint containing an Affidavit of Probable Cause (and the statements of witnesses as stated therein). D's Br. (ECF No. 55-1). As mentioned earlier, ordinarily a court may not consider extraneous documents. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at

Additionally, Defendant Rinker asserts that Plaintiff has pled no motive for her actions nor does Plaintiff describe how her actions were malicious. *Id.* As such, Defendant Rinker submits that the Second Amended Complaint fails to state a claim for malicious prosecution pursuant to the Fourth Amendment. *Id.* In response, Plaintiff asserts that Second Amended Complaint asserts sufficient facts that the criminal prosecution was initiate by Defendant Rinker without probable cause and that Defendant Rinker acted with malicious intent. P's Resp. (ECF No. 64, pp. 3-5).

The analysis hinges on the whether facts establish that Defendant Rinker initiated the criminal charges against Plaintiff without probable cause. Generally, the question of probable cause is based on the totality of the circumstance available to the officer at the time and viewed in the light most favorable to Plaintiff. *Harvard v. Cesnalis*, 973 F.3d 190, 200 (3d Cir. Sept. 1, 2020). Because the inquiry is fact intensive, it is usually appropriate for a jury to determine whether probable cause existed. *Id.*

Officer Rinker suggests that there was probable cause because the Affidavit of Probable Cause shows that two witnesses saw a small child crossing a road by herself and another unattended child standing outside the door of a residence calling for her mother; another neighbor helped the two witnesses find the residence where the children belonged; that one witness notices a strong odor of marijuana coming from the residence; that Officer Rinker conducted an investigation when he arrived; and that while the children could not verbalize as they were one and two years old, they could reach the doorknob of the residence to turn it. D's Br. (ECF No. 58, pp. 5-6). Upon consideration, however, the Court disagrees.

---

14 26. Nonetheless, in deciding a motion to dismiss, the Court may consider documents integral to or explicitly relied on in the complaint. *Jones v. Middletown Twp.,* 253 Fed.Appx. 184, 187 (3d Cir. 2007). "A court may also consider an 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Id.,* quoting *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Thus, this Court will consider the Affidavit of Probable Cause attached to the Motion to Dismiss without converting the motion into one for summary judgment. *See Smithwick v. Detective*, No. 2:18-CV-01057-MJH, 2019 WL 1458993, at *1, n. 1 (W.D. Pa. Apr. 2, 2019).

Drawing all reasonable inferences in favor of Plaintiff and upon review of the Affidavit of Probable Cause, it is unclear if Plaintiff's children were the subject of the call placed to the police department, that her children were outside unattended, that Plaintiff was the guardian of or person supervising the welfare of the alleged subject children that were unattended outside, or that Plaintiff was under the influence of marijuana. Moreover, the Second Amended Complaint sets forth more than bold allegations and assert that the subject children were not outside when Defendant Rinker arrived; the children of both Ms. Holtz and Plaintiff were at the residence of Ms. Holtz when Defendant Rinker arrived. Plaintiff had just finished bathing her one of her minor children when Defendant Rinker arrived. Jefferson County Children and Youth Services ("CYS") was also called to the residence and arrived shortly thereafter. Defendant Rinker and CYS workers questioned all three adults at the residence. Plaintiff was not under the influence of marijuana at the time and Defendant Rinker later testified at her preliminary hearing that she did not show any signs of impairment associated with the use of marijuana. CYS determined that it was safe for the children to stay in the residence with Plaintiff, Ms. Holtz, and Mr. Coward and Defendant Rinker and CYS left the residence. According to Plaintiff, neither CYS nor Butler County CYS (Plaintiff's county of residence) opened an investigation of her as a result of the events. Furthermore, "[m]alice may be inferred from the absence of probable cause." *Lippay v. Christos,* 996 F.2d 1490, 1502 (3d Cir. 1993); *Brown v. Harris*, No. 20-5354, 2022 WL 824236 at 6 (E.D. Pa. March 18, 2022). Thus, after careful consideration and based on the above, dismissal of Count I for failure to state a claim for malicious prosecution is not warranted at this stage.

      2.    <u>Count I (Malicious Prosecution) – Qualified Immunity</u>

Defendant Rinker next argues she is entitled to qualified immunity. (ECF No. 58, pp. 6-

7). Qualified immunity shields government employees from liability unless their conduct violates "clearly established statutory or constitutional rights ... which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). As set forth above, Plaintiff has sufficiently alleged that Defendant Rinker violated her Fourth Amendment right. Thus, dismissal of Count I is not appropriate at this stage based on qualified immunity.

3. Count I (Malicious Prosecution) – Punitive Damages

Lastly, Defendant Rinker asserts that Plaintiff's request for punitive damages should be stricken because Plaintiff has failed to state a claim for malicious prosecution. D's Br. (ECF No. 58, p. 7). Since the Court has not dismissed Plaintiff's claim for malicious prosecution, Defendant Rinker's motion to dismiss Plaintiff's request for punitive damages is denied.

Consequently, Defendant Rinker's Motion to Dismiss Count I (ECF No. 55) is denied.

c. **County Defendants' partial Motion to Dismiss Counts IV and VI only (ECF No. 59)**

1. Count IV (IIED) – Failure to State a Claim

County Defendants first assert Plaintiffs failed to state a viable claim of IIED against them. Ds' Br. (ECF No. 60, pp. 4-5). Like PrimeCare Defendants, County Defendants assert that the conduct alleged in the Second Amended Complaint is not sufficient to rise to the level of extreme and outrageous. Upon review of the Second Amended Complaint in the light most favorable to Plaintiff, as a court must at this stage, the Court disagrees. This Court finds that the facts alleged in the Second Amended Complaint set forth in detail above sufficiently allege continued extreme and outrageous conduct against the County Defendants so as to survive the motion to dismiss. The claim shall be permitted to proceed. Therefore, County Defendants' Motion to Dismiss Count IV (ECF No. 59) is denied in this regard.

### 2. Count IV (IIED) – Political Subdivision Tort Claims Act

Next, Defendants Myers, Schott, and Guenette assert that they are immune from Plaintiff's IIED claim to the extent they are sued in their official capacities[5] under the Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S.A. §8541, *et. seq.,* because an IIED claim is an intentional tort. Ds' Br. (ECF No. 60, pp. 5-6). The PSTCA renders political subdivisions and their employees immune from personal injury suits except under limited circumstances that are defined by statute. 42 Pa. Cons. Stat. §8545; *Patterson v. Armstrong County Children and Youth Services*, 141 F. Supp. 2d 512, 543-44 (W.D. Pa. 2001). These Defendants submit that they are not arguing that the PSTCA renders them immune from Plaintiff's IIED claim in their personal, individual capacities. Ds' Br. (ECF No. 68, pp. 1-2). Rather, County Defendants suggest that they are entitled to immunity as to Plaintiff's IIED claim for acts done in their official capacity.[6] Ds' Br. (ECF No. 60, pp. 5-6; No. 68, pp. 1-2). Thus, to the extent the County Defendants are sued for IIED in their official capacities, they assert they are entitled to immunity pursuant to the PSTCA. *Id.*

In response, Plaintiff argues that when conduct constitutes alleges a crime, actual fraud, actual malice or willful misconduct, immunity under the PSTCA does not apply the County Defendants. P's Resp. (ECF No. 66, pp. 6-7, citing 42 Pa. C.S.A §8550). To that end, Plaintiff essentially argues that her claim for IIED is, "'by its very nature, [] a claim for willful misconduct.'" *Id.,* quoting *L.H. v. Pittston Area Sch. Dist.*, 130 F.Supp.3d 918, 930 (M.D. Pa. 2016). As such, Plaintiff submits that the County Defendants are not entitled to immunity under

---

[5] While Defendants Myers, Schott, and Guenette appear to be sued only in their official capacities, Plaintiff's Second Amended Complaint does not specifically distinguish claims against the officers in their individual capacities from claims against them in their official capacities.

[6] Official capacity claims against a government employee are treated as claims against the employing entity. *Hafer v. Melo,* 502 U.S. 21 (1991); 42 Pa. C.S.A. §8545.

16

the PSTCA for the IIED count.

In reply, County Defendants argue that the "willful misconduct" exception "merely provides an exception to immunity for personal capacity claims and has no effect on defendants in their official capacity. Ds' Br. (ECF No. 68, p. 2). This Court agrees.

Pursuant to the PSTCA, "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or employee thereof or any other person" except as otherwise provided. 42 Pa. C.S.A. §8541. The PTSCA grants tort immunity broadly, waiving it only in certain enumerated narrow categories of negligent acts that do not apply here. *Id.* at §8542(b). Contrary to Plaintiff's argument, section 8550[7] "does not create an exception to section 8542 and therefore does not permit the imposition of liability on the City for the willful misconduct of its employees.... Nothing in section 8550 renders section 8542 inapplicable to lawsuits involving an injury that resulted from a local agency's employee's commission of a crime, actual fraud, actual malice or willful misconduct." *City of Philadelphia v. Brown*, 618 A.2d 1236, 1238–39 (Pa. Cmwlth. 1992)(quoting *City of Philadelphia v. Glim,* 613 A.2d 613, 617 (Pa. Cmwlth. 1992); *see Kostin v. Bucks Cmty Coll., (Nursing Dep't)*, No. CV 21-850-KSM, 2022 WL 952729, at *14 (E.D. Pa. Mar. 30, 2022). Thus, the Court finds that Defendants Myers, Schott, and Guenette are entitled to immunity pursuant to the PSTCA for Count IV (IIED) to the extent they are sued in their official capacities only, but Count IV (IIED) will proceed against them to the extent they are sued in their individual capacities. Consequently, Defendants Myers, Schott, and Guenette's Motion in this regard is granted.

---

[7] Section 8550, provides:
  In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.
42 Pa.C.S.A. § 8550.

3.      Count VI (Loss of Consortium)

Like the PrimeCare Defendants, these Defendants seek to dismiss Plaintiff Michael Bartley's loss of consortium on the theory that if the claim for IIED is dismissed, Plaintiff Michael Bartley's claim for loss of consortium must be dismissed as well. Since the Court has not dismissed Plaintiff's claim for IIED against Defendants Myers, Schott, and Guenette in their individual capacities, their motion to dismiss Count VI for loss of consortium is denied.

V.     **CONCLUSION**

Based on the foregoing, the pending Motions to Dismiss are granted in part and denied in part as set forth above.

An appropriate Order shall follow.

DATED this 3rd day of April 2023.

                                                BY THE COURT:

                                                s/Cynthia Reed Eddy
                                                United States Magistrate Judge

cc:   all counsel of record *via CM/ECF electronic filing*